M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**CLAYEO C. ARNOLD.**
**A PROFESSIONAL LAW CORP**.
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Facsimile: (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com

Danielle L. Perry (SBN 292120)
**MASON LLP**
5101 Wisconsin Ave., NW, Ste. 305
Washington, D.C. 20016
Tel.: (202) 429-2290
Facsimile: (202) 429-2294
dperry@masonllp.com

*Counsel for Plaintiff and the Class*

# THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERICA JEROME, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ITMEDIA SOLUTIONS LLC,<br><br>Defendant. | Case Number: 2:22-cv-02503<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

-1-

Plaintiff Terica Jerome ("Plaintiff") brings this Class Action Complaint against ITMedia Solutions LLC ("Defendant" or "ITMedia") in her individual capacity and on behalf of all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsels' investigations, upon information and belief as to all other matters, and upon facts alleged by the Federal Trade Commission in its Complaint for Civil Penalties, Permanent Injunction, And Other Relief against ITMedia Solutions LLC and related entities,[1] as follows:

## I.    INTRODUCTION

1.    Defendant is a lead generation company that collected personally identifiable information ("PII") from millions of consumers under the false pretense of connecting them with lenders to secure a loan. Defendant distributed and sold Plaintiff's and Class Members' PII from loan applications as "leads" to a variety of entities without consent and without regard to whether these entities are lenders or even used the consumers' data to make loans.

2.    Plaintiff brings this class action against Defendant for improperly sharing and failing to safeguard the PII it acquired from her and from other consumers, including, without limitation, first and last name, address, date of birth, Social Security number, bank-routing and account numbers, driver's license number, state identification numbers, and financial information.

## II.    PARTIES

3.    Plaintiff Terica Jerome is a resident of Alabama residing in Elmore County. Ms. Jerome applied for a loan by visiting www.cashadvance.com during the period starting December 2012 and ending January 10, 2022. As requested by ITMedia, she provided her full name, address, birth date, Social Security number, driver's license number, bank routing number and bank account number.

---

[1] *See Fed. Trade Comm'n v. ITMedia Sols., Inc.*, No. 2:22-cv-0073 (C.D. Cal. filed Jan. 5, 2022) (the "FTC Complaint").

4.     Defendant ITMedia Solutions LLC ("ITMedia") is a California Limited Liability Company with its principal place of business at 2800 Olympic Blvd., Santa Monica, CA 90404.

### III.     JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 Class Members, and at least one Class Member, including Plaintiff Terica Jerome, is a citizen of a state different from Defendant.

6.     The Court has personal jurisdiction over Defendant because it is headquartered in this District, has its principal place of business in this District, and regularly conducts business in this District.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in, were directed to and/or emanated from this District, Defendant is based in this District, and maintains Plaintiff's and Class Members' PII in the District.

### IV.     STATEMENT OF FACTS

**A.     *Defendant's Business Activities.***

8.     ITMedia creates and operates websites that encourage consumers to complete detailed online loan applications. To induce consumers to submit their sensitive data as part of the application process, ITMedia represented that the loan applications it solicits from them will be circulated to only a "trusted network of lenders" to secure loan offers. In reality, however, ITMedia distributes and sells Plaintiff's and Class Members' PII from these loan applications as "leads" to a variety of entities without regard to whether these entities are lenders or use the consumers' data to make loans.

**B.    *ITMedia Solicits Consumer Loan Applications.***

9.    Since December 2012, ITMedia has operated at least 200 Internet sites where it posts advertising that targets: (1) consumers seeking online "payday" loans; (2) consumers with poor credit; and (3) consumers seeking personal and installment loans for as much as $35,000.

10.    The domains that ITMedia has used to operate these sites include:

| | | |
|---|---|---|
| badcreditloans.com | borrowspot.com | mobileloans.com |
| personalloans.com | burstloans.com | mypaydayloans.com |
| cashadvance.com | cashnow.com | onlinepaydayloans.com |
| cashusa.com | cashtoday.com | paydayadvance.com |
| signatureloan.com | fast-loans.net | paydayloannow.com |
| badcredit.com | fastmoney.com | paydayloans.com |

11.    ITMedia's Internet sites represent that they find loans for consumers who complete an online form that ITMedia has described as a loan application or loan request.

**C.    *ITMedia Represents that the Information Consumers Provide Will Be Shared With Only Trusted Lenders to Secure Loans.***

12.    To induce consumers to complete loan applications and include their PII, ITMedia has published websites that assure consumers that it will share the information provided by each consumer with only "qualified" and "trusted" loan providers, and that Defendant only shares consumers' information to find a loan for the consumer. ITMedia has conveyed these messages through the following statements and similar statements on its websites:

- Customers simply fill out our secure online form, then hit the SUBMIT button. From there, your protected data will only be shared with qualified lenders. (*cashadvance.com, FAQ, 2017*)
- We only share your information with our network of trusted lenders, lending partners and financial service providers, in an

attempt to connect you with a lender or lending partner that can offer you a loan. (*signatureloan.com, 2020*)

- [W]e serve as a connector between potential online loan borrowers and the skilled members of our trusted nationwide lending network. The PaydayAdvance.com affiliate lenders have been carefully chosen on the basis of their reputability and trustworthiness, as well as their ability to provide people with quick and easy access to needed funds. (*PaydayAdvance.com, 2017, Rates & Fees*)

- MobileLoans.com connects consumers with an entire network of lenders who offer a variety of loans. We present your information to our vast network of trusted lenders and allow you to decide if the loan offer presented suits your needs. (*Mobileloans.com 2020, How it Works*)

- SignatureLoan.com only works with professional lenders and lending partners who engage in responsible lending practices and are authorized to lend money in the form of signature loans to consumers. (*signatureloan.com 2020*, *best-lending-practices*)

13.    ITMedia's loan forms reinforce these website representations that ITMedia conveys the details requested in its loan forms to loan providers only. For example, during the relevant period, www.personalloans.com contained the following representations next to the boxes seeking detailed information from consumers regarding their application or request for a loan:

**Why do we need this information?**

Don't worry - our lenders and lending partners review requests for all credit and loan types. We simply ask for this information to help ensure that you are connected with a lender or lending partner that can work for you!

Providing us with accurate, up-to-date information is essential to being considered for a loan.

**Contact Information**

We collect this information because, if you are approved, lenders or lending partners will often reach out to you quickly to confirm your loan.

**Employment Information**

Our lenders and lending partners require this information to consider you for a loan.

**Identity and Bank Information**

Lenders and lending partners must be able to verify your identity when reviewing your request.

**D.    *ITMedia's Representations to Consumers About Its Use of Consumer Information Are Deceptive.***

14.    On websites where ITMedia has made the representations set forth above, ITMedia has collected consumers' Internet protocol address and online tracking data, and urges consumers to complete loan forms that require the following information:

     a)    contact information, including names, residential addresses, email addresses, and telephone numbers;

     b)    birthdates, Social Security numbers, bank-routing and account numbers, and driver's license and state identification numbers;

     c)    information regarding the consumers' resources, including whether and where consumers are employed, how long they have been employed, whether they own a home or a car, monthly income, and how frequently they are paid;

d)      consumers' job titles and whether they are active members of the military; and

e)      consumers' credit score range and reason for borrowing.

15.     ITMedia's representations regarding the manner in which information required by its online forms will be distributed and used are important to consumers deciding whether to share their information because of concerns regarding unwanted marketing, invasion of privacy, and identity theft.

16.     As alleged by the FTC in its Complaint against ITMedia, instead of connecting consumers to lenders as promised, ITMedia distributes the consumer information it collects on these loan forms to a variety of entities in a "lead marketplace" in which the PII is transmitted to prospective buyers. Entities participating in this marketplace bid against each other to purchase the opportunity to use the consumer information. *See* FTC Complaint ¶ 28.

17.     As alleged by the FTC in its Complaint, although ITMedia represents that it provides consumers' sensitive information to entities that will offer loans to consumers, ITMedia in fact does not require that the entities that receive and bid to purchase consumer information, including complete loan applications, be loan providers and ITMedia does not require that these entities use the information they receive to offer loans. *See* FTC Complaint ¶ 29.

18.     When ITMedia does not succeed in selling consumer information to prospective buyers in its lead marketplace, it offers information about such "declined" consumers to other types of entities that are not loan providers and which are seeking leads, marketing lists, or other compilations of consumer data that Plaintiff and Class Members provided to Defendant on the loan applications. *See* FTC Complaint ¶ 30. ITMedia also directs some of these declined consumers to online advertising for loans and non-loan product and services, in exchange for compensation from the entities advertising those products and services. *Id*. ITMedia

does not require that these entities use the information they receive to offer loans. *Id*.

19.     Because ITMedia does not require that the recipients of the information collected on its loan forms be lenders, it has improperly provided consumer information it collected from loan applications to:

    a.     businesses that are not lenders but illegally market loan products, including Lead Express, Inc., Camel Coins, Inc., and Sea Mirror, Inc., as described in *Fed. Trade Comm'n v. Lead Express, Inc.*, No. 20-cv-00840 (D. Nev.);

    b.     debt negotiation and credit repair servicers that do not provide loans;

    c.     pre-paid debit card sellers;

    d.     marketers that license the information to advertise to consumers through email, text messages and telemarketing, and are not required to use the information to offer loans;

    e.     entities whose business and interest in the data is not known to ITMedia; and

    f.     marketers and lead aggregators that share the consumer information with other entities whose identity, business, and interest in the information is not known to ITMedia.

20.     In fact, ITMedia seldom sells the information consumers submit in their loan applications to lenders. As set forth by the FTC in its Complaint, since January 2016, for the overwhelming majority of consumers (*i.e.*, more than 84 percent) who have submitted loan applications at an ITMedia website, ITMedia has either: (i) sold the consumers' information to entities that are not lenders (including non-lender aggregators, marketers, and companies whose use of the information is unspecified); (ii) used the consumers' loan applications to create targeted marketing data for telemarketers, email advertisers, and other entities, or (iii) directed the consumers to online advertisements. FTC Complaint ¶ 34.

### E.  *ITMedia Indiscriminately and Improperly Shares PII.*

21.     When ITMedia distributes consumers' loan application information to prospective buyers in its lead marketplace, it does not mask or otherwise restrict PII, including Social Security numbers and financial account information. FTC Complaint ¶ 39.

22.     ITMedia also improperly transmits loan applications containing Plaintiff's and Class Members' PII to entities that have not purchased the consumers' information. ITMedia could selectively mask or withhold information in the applications so that only entities that purchase an application receive sensitive information, but it chooses not to do that. Indeed, because of the way ITMedia distributes consumer information, it sends most loan applications—unmasked and unredacted—to multiple entities that have not committed to purchase the information, much less offer a loan to the consumer.

23.     As alleged in the FTC Complaint, beginning in or about 2015, ITMedia authored a document described as a policy for safeguarding sensitive information that it collects from consumers. FTC Complaint ¶ 41. Defendant subsequently authored documents that purport to be revised or updated policies for protecting such information. *Id*.

24.     ITMedia's policies and procedures:

- Do not require that an entity that obtains leads from ITMedia certify that it uses such information solely to respond to the consumer's loan request.

- Lack any provision for assessing whether purchasers and prospective purchasers safeguard information they received from ITMedia or use such information for purposes other than offering a loan.

- Lack any program for investigating whether sensitive consumer information it furnishes to potential purchasers is safeguarded or used for purposes other than offering a loan. FTC Complaint ¶ 41.

- Lack any program, however, for assessing the content the of policies and procedures of entities receiving PII from IT Media, whether such policies and procedures have been implemented, or whether such policies and procedures are effective. *Id.*

**F.    *Value of Personally Identifiable Information.***

25.    The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, Personal Information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[2] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[3] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[4]

26.    Social Security numbers, for example, are among the worst kind of PII to have exposed because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name.

---

[2] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Feb. 2, 2022).

[3] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited Feb. 2, 2022).

[4] *In the Dark*, VPNOverview (2019), https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Feb. 2, 2022).

Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[5]

27.    It is no easy task to change or cancel a stolen or exposed Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

28.    Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[6]

29.    Based on the foregoing, the information exposed by Defendant is significantly more valuable than, for example, credit card information because, there, victims can cancel or close credit and debit card accounts. The information compromised by Defendant is impossible to "close" and difficult, if not impossible, to change—Social Security number, driver's license number, name, and date of birth.

---

[5] Social Security Administration, *Identity Theft and Your Social Security Number* (July 2021), https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Feb. 2, 2022).
[6] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last visited Feb. 2, 2022).

30.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[7]

31.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

32.     The fraudulent activity resulting from the expose of Plaintiff's and Class Members' PII may not come to light for years.

33.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen or exposed data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[8]

34.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members, including Social Security numbers, and of the foreseeable consequences that would occur if Defendant's exposed consumers' PII, including, specifically, the significant

---

[7] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Feb. 2, 2022).

[8] *Report to Congressional Requesters*, GAO, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf (last visited Feb. 2, 2022).

costs that would be imposed on Plaintiff and Class Members as a result.

35.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

36.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data in Defendant's possession, amounting to potentially millions of individuals' detailed PII, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data to entities that were not entitled or authorized to access the PII with the permission of Plaintiff and the Class.

37.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to safeguard the PII of Plaintiff and Class Members; Defendants improper sharing of the sensitive information it required from consumers.

38.    The ramifications of Defendant's failure to safeguard the PII of Plaintiff and Class Members are long lasting and severe. Once PII is stolen or otherwise exposed, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

**G.    *The Injury to Plaintiff and Class Members.***

39.    The types of personal, financial, and credit details about consumers that ITMedia collects and disseminates, including Social Security numbers, are often used to commit identity theft and fraud. For example, identity thieves use stolen names, addresses, and Social Security numbers to apply for credit cards in the victim's name. When the identity thief fails to pay credit card bills, the victim's credit suffers. Stolen personal information is also used to create phantom debt records used by debt collectors to harass consumers and demand payment for debts the consumers do not owe. Misappropriated bank account information can be used

for unauthorized billing or fraudulent check scams. Identity thieves also use Social Security numbers and bank account information to intercept consumers' tax refunds fraudulently.

40.    As a result of the actions taken by ITMedia, Plaintiff Terica Jerome reasonably believes that her PII, including her Social Security number, driver's license number, bank routing number and bank account number, is widely available to unauthorized third-parties and may be used to commit theft of her identity and fraud. In an effort to mitigate damages, Plaintiff Jerome has placed a freeze on her credit reports.

41.    ITMedia's practice of broadly disseminating consumer information, including to entities that share information with others whose identities and use of the information are unknown to ITMedia, exposes Plaintiff and Members of the Class to the risk of substantial harm from identity theft, imposter scams, unauthorized billing, phantom debt collection, and other misuse of the consumers' information.

42.    Some consumers have complained that, shortly after submitting loan applications to ITMedia, they have received communications using the names of ITMedia websites to present sham loan offers or demands for repayment of counterfeit debt.

43.    Plaintiff and Class Members do not know about and have not consented to ITMedia sharing their sensitive PII with entities that are not using the information solely to respond to the consumer's requests for a loan. Plaintiff and Class Members do not know to whom ITMedia has shared their sensitive PII.

44.    Consumers cannot reasonably avoid the harms and potential harms that the disclosures of their sensitive PII cause, including identity theft and account fraud.

45.    Insofar as ITMedia has posted statements that consumers' PII is shared with entities that are not using the information to respond to the consumer's request for a loan, it has done so in pages separate from its loan forms, and has not required

that consumers view such pages before providing their sensitive PII. Even if consumers did click on the hyperlinks that lead to such pages, they would be unlikely to see the statements regarding the use of consumers' PII because Defendant buried this information in dense, tiny, single-spaced text.

## V.    CLASS ACTION ALLEGATIONS

46.    Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated ("the Class").

47.    Plaintiff proposes the following Class definition, subject to amendment as appropriate:

**All persons who submitted Personally Identifiable Information to ITMedia by completing an online loan application.**

48.    Excluded from the Class are Defendant's officers and directors, and any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

49.    Plaintiff hereby reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

50.    <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of thousands of persons whose data was compromised in Data Breach.

51.    <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

      a.    Whether Defendant unlawfully disclosed Plaintiff's and Class Members' PII;

b.     Whether Defendant's conduct was negligent;

c.     Whether Defendant intentionally misrepresented what it used Plaintiff and Class Members' PII;

d.     Whether Defendant was unjustly enriched; and

e.     Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

52.     Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII, like that of every other Class Member, was compromised in the Data Breach.

53.     <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

54.     <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' PII was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

55.     <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action

presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

56.    Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

57.    Finally, all Members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach.

## VI.    CAUSES OF ACTION

### COUNT I

### NEGLIGENCE

**(On behalf of Plaintiff and All Class Members)**

58.    Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 57 above as if fully set forth herein.

59.    ITMedia has shared and sold sensitive personal and financial information from consumers' loan forms—including consumers' full names, addresses, email addresses, phone numbers, birthdates, Social Security numbers, bank routing and account numbers, driver's license and state identification numbers, income, status and place of employment, military status, homeownership status, and approximate credit scores—without consumers' knowledge or consent and without regard for whether the recipients are lenders or otherwise had a legitimate need for the information.

60.    Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII were wrongfully disclosed.

61.    By assuming the responsibility to collect and safeguard PII, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of

care to use reasonable means to secure and safeguard it to prevent disclosure of the information to unauthorized parties.

62.     Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.   Distributing the PII it collects on loan forms to a variety of entities in a lead marketplace in which PII is transmitted to prospective buyer, rather than connect consumers to lenders as promised;

b.   Distributing leads, marketing information and other data with consumer information to entities that are not loan providers;

c.   Not requiring that loan providers who received the PII use the information to make loan offers; and

d.   Failing to mask or otherwise restrict PII, such as social security numbers and financial account information.

63.     It was foreseeable that Defendant's failure to use reasonable measures to safeguard Class Members' PII would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the industry.

64.     It was therefore foreseeable that the failure to adequately safeguard Class Members' PII would result in one or more types of injuries to Class Members.

65.     There is a temporal and close causal connection between Defendant's failure to implement security measures to protect the PII and the harm suffered, or risk of imminent harm suffered by Plaintiff and the Class.

66.     As a result of Defendant's negligence, Plaintiff and the Class Members have suffered and will continue to suffer damages and injury including, but not limited to: out-of-pocket expenses associated with procuring robust identity protection and restoration services; increased risk of future identity theft and fraud, the costs associated therewith; time spent monitoring, addressing and correcting the

current and future consequences of Defendant's failure to safeguard their PII; and the necessity to engage legal counsel and incur attorneys' fees, costs and expenses.

67.     Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of Defendant's conduct described herein.

## COUNT II

### NEGLIGENCE *PER SE*

68.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 57 above as if fully set forth herein.

69.     ITMedia has shared and sold sensitive personal and financial information from consumers' loan forms—including consumers' full names, addresses, email addresses, phone numbers, birthdates, Social Security numbers, bank routing and account numbers, driver's license and state identification numbers, income, status and place of employment, military status, homeownership status, and approximate credit scores—without consumers' knowledge or consent and without regard for whether the recipients are lenders or otherwise had a legitimate need for the information.

70.     Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII were wrongfully disclosed.

71.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

72.     Misrepresentations or deceptive omissions of material fact are deceptive acts or practices prohibited by Section 5(a) of the FTC Act. Acts or practices are unfair under Section 5 of the FTC Act if they cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

73. ITMedia represented or caused to be represented, directly or indirectly, expressly or by implication, that:

    a. It will only share information consumers submit on loan forms to connect the consumer with a loan offer; and

    b. Information consumers submit on loan forms will be given to loan providers only.

74. The representations set forth in Paragraph 57 are false and misleading, or were not substantiated at the time the representations were made.

75. Therefore, the making of the representations as set forth in Paragraph 68 constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

76. Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se* as Defendant's violation of the FTC Act establishes the duty and breach elements of negligence.

77. Plaintiff and Class Members are within the class of persons that the FTC Act was intended to protect.

78. The harm that occurred as a result of the failure to safeguard Plaintiff's PII is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, including ITMedia, that as a result of their failure to employ reasonable data security measures caused the same harm as that suffered by Plaintiff and the Class.

79. But for Defendant's negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

80. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet their duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their PII.

81.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

## COUNT III

### INTENTIONAL MISREPRESENTATION

82.    Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 57 above as if fully set forth herein.

83.    As detailed above, the Defendant made false or misleading statements to Plaintiff and Class Members regarding the use of the PII it solicited, including that:

a.    It will only share information consumers submit on loan forms to connect the consumer with a loan offer; and

b.    Information consumers submit on loan forms will be given to loan providers only.

84.    The representations set forth in Paragraph 91 are false and misleading, or were not substantiated at the time the representations were made.

85.    The Defendant knew the representations were false and intended that Plaintiff and Class Members to rely on them.

86.    These misrepresentations were material to Plaintiff's and Class Members' decision to apply for a loan.

87.    Plaintiff and Members of the Class justifiably relied on Defendant's representations in deciding to submit their PII.

88.    ITMedia's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT IV

### UNJUST ENRICHMENT

89.    Plaintiff restates and realleges paragraphs 1 through 57 above as if fully set forth herein.

90. Plaintiff and Class Members conferred a monetary benefit on Defendant by providing Defendant with their PII.

91. Defendant appreciated that a monetary benefit was being conferred upon it by Plaintiff and Class Members and accepted that monetary benefit.

92. However, acceptance of the benefit under the facts and circumstances outlined above make it inequitable for Defendant to retain that benefit without payment of the value thereof.

93. Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures.

94. Defendant acquired the PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

95. If Plaintiff and Class Members knew that Defendant had not secured their PII, they would not have agreed to provide their PII to Defendant.

96. Plaintiff and Class Members have no adequate remedy at law.

97. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered or will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the failure to safeguard, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII,; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the

impact of the compromised for the remainder of the lives of Plaintiff and Class Members.

98.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

99.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

a.    For an Order certifying this action as a class action and appointing Plaintiff and her counsel to represent the Class;

b.    Ordering Defendant to pay for lifetime credit monitoring and identity theft services for Plaintiff and the Class;

c.    For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

d.    For an award of punitive damages, as allowable by law;

e.    For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

f.    Pre- and post-judgment interest on any amounts awarded; and

g.    Such other and further relief as this court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

1
2

Dated: April 13, 2022

**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**

3
4

*/s/M. Anderson Berry*
M. Anderson Berry (SBN 262879)

5

Gregory Haroutunian (SBN 330263)

6

865 Howe Avenue
Sacramento, CA 95825

7

Telephone: (916) 777-7777
Facsimile: (916) 924-1829

8

aberry@justice4you.com

9

gharoutunian@justice4you.com

10

Danielle L. Perry (SBN 292120)

11

**MASON LLP**
5101 Wisconsin Avenue NW, Ste. 305

12

Washington, D.C. 20016
Telephone: (202) 429-2290

13

Facsimile: (202) 429-2294

14

dperry@masonllp.com

15
16
17
18
19
20
21
22
23
24
25
26
27
28